## SCHIFF v SCHIFF

Ohio Appeals, 2nd District,
Franklin County.

No. 3463. Decided June 30th, 1942.

Jerome Goldman, Cincinnati, James I. Boulger, Columbus, for defendant-appellant.

Hedges, Hoover & Tingley, Columbus, for plaintiff-appellee.

**OPINION**

By HORNBECK, J.

Appellant notes two appeals in this case, one on questions of law, the other on questions of law and fact.

Plaintiff instituted his action for divorce against the defendant on the grounds of gross neglect of duty and extreme cruelty. Defendant answered, denying the averments of the petition and cross-petitioned for divorce and in her amended cross-petition pleads two causes of action, the first, a charge of gross neglect of duty. The sec-

ond cause of action sets up a separation agreement alleged to have been entered into between the parties, by the terms of which plaintiff was to turn over to defendant 1000 shares of common stock of the Schiff Company, a corporation, and to pay defendant so long as she lived, beginning October 1, 1940, the sum of $200.00 per month and to irrevocably assign to defendant an insurance policy on the life of the plaintiff in the face amount of $25,000.00, without further obligation on the part of the plaintiff to pay premiums thereon, and to turn all furnishing in the home of the parties over to the defendant, the defendant to accept performance of this agreement on the part of the plaintiff as and for her support and maintenance and in lieu of alimony. The defendant prays that plaintiff's petition be dismissed; that he be required to specifically perform the terms of the agreement set out in the second cause of action of the amended cross-petition, and if the Court does not so order, that a property allowance and alimony award be made to the defendant in an amount as she may be justly entitled for temporary alimony and counsel fees and expenses.

The trial judge, after hearing the case upon deposition and evidence taken in open court, granted a decree of divorce to the plaintiff for the aggression of the defendant on the two grounds set out in the petition, awarded her the sum of $6500.00 as property settlement in addition to temporary alimony theretofore ordered by the court, fixed counsel fees for defendant's attorneys in the sum of $1500.00, and required plaintiff to pay the costs in the action.

The Court found against the defendant on her amended answer and cross-petition and refused to

order specific performance of the agreement set forth in the second cause of action of the amended cross-petition.

From the divorce decree of the Court and the property settlement as fixed, the appeal on questions of law is prosecuted. The appeal on questions of law and fact is directed to the refusal of the Court to require the plaintiff to specifically perform the agreement set out in the amended cross-petition.

Twelve errors are assigned on the appeal on questions of law, which we consider under general topics as appearing in the brief of the defendant on the error proceedings instead of the headings as set forth in the assignments of error.

It is first urged that the plaintiff failed to prove a case entitling him to a divorce.

On the appeal on questions of law we must accord to the trial judge the right to give the evidence supporting his judgment the most favorable interpretation which it will bear, in favor of the plaintiff. So doing, we are satisfied that the record at least supports the finding and ▆▆▆▆▆▆▆▆ ▆ judgment that defendant was chargeable with extreme cruelty toward the plaintiff, and, in probability, also with gross neglect of duty. The mistreatment by defendant of Shirley Schiff and Philip Schiff, daughter and son, respectively, of plaintiff, her frequent and almost constant complaints, designated as nagging by the witnesses, directed to the plaintiff and to the immediate members of his family, her general dissatisfaction with her marital status, her open preference for her boys and discrimination against his children, the disparity which she stressed between the lineage, culture and social standing of the families, the un-warranted and cruel charge which she made against plaintiff's daughter, all might well have aggravated, if they did not cause, as he testifies, the duodenal ulcer with which the plaintiff was afflicted at the time of the separation of the parties and for years prior thereto. If defendant's conduct aggravated this affliction with which plaintiff suffered, then clearly the cruelty was extreme in the sense that it was mental cruelty, accompanied by physical consequences.

In this determination, we readily concede that there is abundant evidence in the record, had the trial judge accepted it, to refute any theory of misconduct on the part of the defendant and to establish the fact that she was a capable, considerate and sympathetic wife and mother. The record presents the usual contradictions, and to say that the evidence does not support the judgment of the Court as to the proof of a ground for divorce, would require an invasion into its prerogative to weigh the evidence, which is not proper nor justifiable in a review on error. There is but a single cause of action in divorce. **Arnold v Arnold, 110 Oh St 416.**

It is next asserted that there is no corroborative evidence to support the plaintiff's asserted grounds for divorce. There is corroboration of his claim by the testimony of Philip Schiff, Shirley Schiff and particularly by the maid, Dora Bruce, who testified to the whipping which the defendant administered to Shirley Schiff, and to the violence practiced upon her by striking her in the face with galoshes, and the ill-treatment immediately thereafter. It is true that the evidence of the supporting witnesses relates to occurrences some time prior to the separation, but they are corroborative of the course of conduct which plaintiff testi-

fies continued up to the time of separation.

Finally, it is asserted that any offense which may have been proven clearly has been condoned by the appellee. Condonation is conditional forgiveness and, upon the testimony of the plaintiff, it appears that the general misconduct of the defendant was continuing up until the time that the plaintiff left his home and was a causative factor in his determination to separate from the defendant.

We have held in Winnard v Winnard, 64 Oh Ap, 351, that condonation is an affirmative defense. If the Court, after hearing the testimony, refused to grant a decree because condonation clearly appeared, it is probable that it would not be reversible error, even though condonation was not pleaded. However, when a party goes to trial without setting up a defense of condonation, and it is not at any time during the trial urged upon the court that such a claim is being made, it may not properly be urged for the first time upon a motion for a new trial or upon appeal.

The fourth error discussed in the brief of appellant is that the cross-petition of defendant for alimony should have been granted. It follows from what we have heretofore said with respect to the divorce decree, that this assignment is not well made.

It is further urged that there was irregularity on the part of the trial judge which deprived the appellant of a fair trial. It is suggested that there was something irregular in the transfer of the case from the regular Domestic Relations Judge to the trial Judge. Nothing whatever is produced to support this contention.

Upon the examination of the defendant in chief, at page 62 of the record, this question was put and answer made:

"Q. And what was the reason for your nervousness in Milwaukee? A. The first reason was because he neglected me; another reason, I just can't tell, it was so important to me, I will only tell the Judge; I don't like to speak about it. And people called on us—

"MR. GOLDMAN: Just a moment, Mrs. Schiff; will Your Honor care to hear that portion in chambers? It is probably embarrassing.

"THE COURT: If she does not want to tell it, just skip it; it wouldn't help very much; I don't care about those intimate matters. What ought to be done in this case—

"MR. GOLDMAN: All right, Your Honor."

It is said in the brief that this testimony related to certain sexual abuses of the plaintiff toward the defendant, and that it had very material bearing upon her physical condition and nervousness, and that the Court in refusing to receive the testimony indicated a prejudiced attitude. The Court did not refuse to take the testimony, but said that if the defendant did not want to answer the question in open court that it might be omitted. The question, if answered, would have referred only to nervousness of the defendent when the parties lived in Milwaukee many years prior to ·their separation, and did not. undertake to bring its application down to any time which would make it probative as to the defense to the petition or upon the cross-petition of defendant. Counsel indicated no objection to the ruling of the Court and proffered no answer which the defendant would have given had she been permitted to testify.

The depositions of the doctors who treated the defendant do not relate her condition to anything that might have been elicited by the question under consideration.

Attention is directed to the fact that upon the conclusion of plaintiff's testimony the Court, without requiring the plaintiff to offer corroborative evidence, required the defendant to take the stand. The action of the Judge and the statement made by him when defendant was called to the stand briefly appear in the bill, and again no objection was interposed to that which the Court did. If the defendant had elected to stand upon her right to have the plaintiff complete his case before proceeding with her defense, the record would present a different question. The cause proceeded, and the Court permitted all of the competent and relevant testimony proffered by either party to be offered and the case was fully and completely tried.

We are unable in this record to find anything which will require us to hold that the ▬▬▬▬ trial judge was prejudiced against the cause of the defendant or that his decision and judgment were predicated on anything other than his judicial concept of the effect of all the evidence properly before him.

We have briefly disposed of all questions urged upon the appeal on questions of law with the exception of the amount of the award to the defendant by way of property settlement. We will consider this assignment after we have given attention to the appeal on questions of law and fact.

The appeal of the defendant on law and fact is directed to the refusal of the court to decree specific performance of the contract alleged in the second cause of action of defendant's amended cross-petition. We have heretofore set out this contract as pleaded. The greater part of the record which comes to our attention is directed to the issue made upon this claim of the defendant. The testimony is very difficult to resolve upon the vital question whether or not plaintiff directly or by authorization made the proposal which defendant claims to have accepted. The plaintiff's testimony appearing in his deposition taken before the trial differs materially from that which he gave in open court.

Considering his evidence in the light of all the circumstances we incline to the finding that he made the proposal to Mr. Berman and to appellant's son, Jack Benjamin, in the office of Mr. George Hedges, Sr., plaintiff's attorney, in all particulars, save as to household furniture, as set out in the amended cross-petition. In substance, he admits as much in his deposition, although he denies it in his testimony before the trial judge. We can not say that Mr. Hedges was apprised of the fact that this specific proposal had been made in his office, because of the fact that he was out of the room for a considerable part of the time that the parties had the matter under discussion.

It is evident, however, that whatever proposal was made by or with authority of the plaintiff, in the offices of Hedges, Hoover & Tingley, did not and could not become a binding contract until it was accepted in its exact terms by the defendant. No one in the conference was authorized to accept for the defendant any proposal made by the plaintiff. The record discloses that the defendant did indicate her acceptance of the settlement proposal as transmitted to her by her brother, Mr. Berman, and her son, Jack Benjamin, but from the

evidence presented in this Court it appears that she added one condition not appearing in the proposal proven to have been made by the plaintiff.

In the Common Pleas Court the only proof of the transmittal of acceptance of plaintiff's offer was the telephone conversation which Mr. Berman had with Mr. Robert Schiff, wherein Mr. Berman said that he, for the defendant, accepted the offer. There was not below nor is there in this Court sufficient proof that the communication to Robert Schiff, without more, would establish that plaintiff had knowledge of the acceptance.

In the trial in this Court Jack Benjamin testified that he sent a telegram to Morris Schiff, in care of Schiff Company, 35 North Fourth Street, Columbus, Ohio, and it further appears that this telegram was transmitted and delivered. Morris Schiff denies its receipt, and it does not clearly appear that it was received by him. This telegram is as follows and is significant:

"Mother will accept a thousand shares; two hundred a month; assignment of policy; mother to get divorce. Will submit form of agreement."

Following this wire an agreement was prepared, sent to Columbus counsel for defendant and submitted by him to Mr. Hedges, Sr., of counsel for plaintiff. It is testified by Columbus counsel for defendant that this contract was submitted to Mr. Hedges, Sr., and that he made no material objection thereto, merely suggesting minor changes.

It is obvious, that if it is to be found that there is a binding contract between the paries it must first appear that the acceptance of the proposal made by the plaintiff was received by the plaintiff. This does not definitely appear. It must further be established that the acceptance was identical with the offer and unconditional; if it is conditional or introduces a new term, it constitutes merely an expression of a willingness to treat or a counter proposal, and does not complete the contract. 17 C. J. S. Contracts, Par. 43.

The telegram, in our judgment, is not an unconditional acceptance, but inserts a new proposal, namely, that "Mother to get divorce". As of the date of the telegram, the plaintiff's divorce petition was filed and his cause pending. If the proposal in the telegram be observed it would have been necessary for him to have dismissed his divorce petition, or, for the defendant to have filed her cross-petition and the decree have been granted to her. At the outset, we are confronted with the well recognized principle that a collusive agreement for divorce is illegal and would vitiate the contract of which it was to be made a part. If the proposal as to the divorce decree could, in any view, be made the subject of the contract, it clearly was a new and different proposal. Although the matter was discussed in the conference at the offices of Hedges, Hoover & Tingley it does not appear that it was agreed upon or understood, and surely it was properly not made the subject of the proposal, as announced in the meeting, and, as pleaded in the amended cross-petition of the defendant. We are satisfied that the proof of acceptance of the proposal as made by the plaintiff is not forthcoming and will not afford the basis of the decree of specific performance of the agree-

ment; nor does it sufficiently appear that it was received by the plaintiff or by any one authorized to receive it for him.

We come then, to the final question, namely, whether or not the award by the trial judge of $6500.00 in connection with the assessment of costs against the plaintiff, and the requirement that he pay $1500.00 attorney's fees, is just, under the terms of §11993 GC. The trial court was of opinion that the estate of the plaintiff had not been materially increased during the marital relations of the parties.

These parties were married in 1926 and lived together as husband and wife until 1940, in all, almost 15 years. The marriage was a venture which might well fail unless the parties could adapt themselves to difficult and trying conditions. The plaintiff, at the time of his marriage to the defendant, had two children, the older, a son, Philip, by a first wife, a daughter, Shirley, but an infant, by a second wife. The defendant had two sons. The defendant, notwithstanding her faults, as found by the trial judge, remained at the home of the plaintiff and cared for his children as well as her own, and to a considerable extent met the duties of a wife toward the plaintiff. He was liberal and considerate of her boys, supported and educated them and spent money in their behalf far beyond any legal obligation incumbent upon him. These boys are now adults and able and, no doubt, willing to meet their legal obligation to assist in the support of their mother. Although her sons may be willing to assist their mother financially, it is probable that Bob, who is now in the armed service, will not be financially able to do anything substantially to that end. Jack is a young attorney in the practice and, although it

would appear that he is making satisfactory progress in his profession, the extent of his earnings and capacity to assist his mother does not appear. Her needs are obvious and imminent and there certainly is no showing that she had at the time of trial any property of consequence.

The divorce having been awarded to the plaintiff, it is not his obligation to provide for the defendant, and she is entitled only to such a sum of money as represents that proportion of her husband's real or personal property as is just.

It is probable upon the record that the financial status of the plaintiff was materially benefited during the years that he was married; certainly, in the period following 1929. The evidence is not specific upon this question, but the inference may be drawn from the testimony generally as to the progressive financial worth of the plaintiff. If his estate did not increase to a marked degree, at least he maintained sizable holdings, both real and personal, and his salary was well above the average. It thus is apparent that his wife did not unfavorably affect his earning capacity, and during their married life, from all sources, he enjoyed a large income. It can not be fairly said upon this record that the defendant deserves no substantial consideration in the general betterment of plaintiff's financial status. Plaintiff fixed the value of his holdings at $80,000.00 to $84,000.00. For many years his income approximated $15,000.00 annually. In 1936, he reported a net income for income tax returns of $23,118.19; in 1937, $19,265.76; in 1938, $14,892.54; in 1939, $26,000.00; in 1940, $16,205.10. Plaintiff insists that he did not act with full knowledge of his legal rights, and was of

the impression that his wife, upon any condition, would be entitled to a full third of his estate and states that he reached this conclusion by reason of the statement of Jack Benjamin, in whom he had confidence. However, the plaintiff, according to the statement of his own counsel, was fully advised of his legal rights by his own counsel at a time subsequent to the date when he talked the matter over with Jack Benjamin. So that plaintiff acted with full knowledge of the extent of his obligations to his wife upon a property settlement. The amount which he believed he should pay her represents a sum far in excess of the amount fixed by the trial judge.

In considering all of the evidence in determining what is a just apportionment of the property of the plaintiff, as before stated, all of the conduct of the defendant in her marital relations was not to her discredit. We are impressed with the fact that the trial court could, upon the record, as well have held in her favor as against her and that in certain aspects the testimony against her lacks convincing power. The maid who testified that the defendant had so abused Shirley as that she, the maid, could no longer remain in the home, said that she had told of the occurrences to two employees of the employment agency which secured her her appointment in the Schiff home. Both of these employees took the stand and testified that they remembered of no such report of occurrences as testified by the maid, and further, that the occurrences being of such an unusual nature, they would have remembered them if they had been related to them. Two other maids, who had been in the home of the Schiffs at different times and for longer periods than the one who testified against the

defendant, stated that her attitude toward Shirley was fine; that she was a considerate, kindly and indulgent mother, and that at no time did they or either of them hear her upbraid, criticize or chastise Shirley, nor did she punish her in any manner whatever. The record discloses that Shirley, until a comparatively short time before the separation of the parties, did not know that the defendant was not her own mother. When she was informed that her father meant to separate from the defendant, Shirley, according to his own admission, indicated a desire to live with the defendant. However, when Shirley was called to the stand she corroborated the story of the maid as to her punishment by the defendant and supported her father in considerable of his testimony.

We have only indicated some of the facts appearing which are convincing that this case may not be definitely and conclusively resolved in all particulars against the defendant. This being true, it is only just that she be given due consideration in determining what portion of the property of plaintiff should be awarded to her in view of her physical condition which obviously is not good. By reason of defendant's nervous state, she is, if otherwise qualified, not able to earn money and will for a long time and probably continuously be in need of medical care and attention. She is a woman of culture and refinement, accustomed to living in a manner in keeping with her station in life. Although we are adverse to disturbing the judgment of the trial court in whose ability we have confidence, we are convinced that the ██ property settlement is too low and that it should be fixed at a sum not less than $15,000.00, and we would

readily have affirmed an amount in excess of that sum had the trial judge so fixed it.

It will, therefore, be the judgment of this Court that upon the appeal on questions of law no assignments of error are sustained except that one which relates to the amount awarded to the defendant by way of property settlement. If the plaintiff elects in this Court to accept a modification of the judgment providing that he be required to pay the sum of $15,-000.00 to the defendant as and for her property settlement, the judgment will be affirmed on the appeal on questions of law; otherwise, reversed, because the amount fixed therein is too low under the statute.

On the appeal on questions of law and fact the finding and judgment of this Court will be in favor of the plaintiff upon the issues joined upon the second cause of action of defendant's amended cross-petition and the reply thereto.

GEIGER, PJ, & BARNES, J., concur.